JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

APPENDIX H

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM )

## I. (a)  PLAINTIFFS

Erik E. Kolar

(b)  County of Residence of First Listed Plaintiff   Delaware (PA)
(EXCEPT IN U S. PLAINTIFF CASES)

(c)  Attorney's (Firm Name, Address, and Telephone Number)  215-575-3800
Braverman Kaskey P.C., One Liberty
Place, 21st Flr., Phila., PA 19103

## DEFENDANTS

Preferred Real Estate Investments, Inc.
et al.

County of Residence of First Listed Defendant
(IN U S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U S. Government
        Plaintiff

☒ 3  Federal Question
        (U S. Government Not a Party)

☐ 2  U.S. Government
        Defendant

☐ 4  Diversity
        (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                     and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>  & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>  Student Loans<br>  (Excl. Veterans)<br>☐ 153 Recovery of Overpayment<br>  of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>  Liability<br>☐ 320 Assault, Libel &<br>  Slander<br>☐ 330 Federal Employers'<br>  Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>  Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>  Product Liability<br>☐ 360 Other Personal<br>  Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury -<br>  Med. Malpractice<br>☐ 365 Personal Injury -<br>  Product Liability<br>☐ 368 Asbestos Personal<br>  Injury Product<br>  Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>  Property Damage<br>☐ 385 Property Damage<br>  Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure<br>  of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational<br>  Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards<br>  Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt Reporting<br>  & Disclosure Act<br>☐ 740 Railway Labor Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>  28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☒ 470 Racketeer Influenced and<br>  Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/<br>  Exchange<br>☐ 875 Customer Challenge<br>  12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc<br>  Security Act | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U S. Plaintiff<br>  or Defendant)<br>☐ 871 IRS—Third Party<br>  26 USC 7609 | ☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information<br>  Act<br>☐ 900 Appeal of Fee Determination<br>  Under Equal Access<br>  to Justice<br>☐ 950 Constitutionality of<br>  State Statutes |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>  Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities -<br>  Employment<br>☐ 446 Amer. w/Disabilities -<br>  Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate<br>  Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1  Original
       Proceeding

☐ 2  Removed from
       State Court

☐ 3  Remanded from
       Appellate Court

☐ 4  Reinstated or
       Reopened

☐ 5  Transferred from
       another district
       (specify)

☐ 6  Multidistrict
       Litigation

☐ 7  Appeal to District
       Judge from
       Magistrate
       Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. Sec. 1961 et seq.

Brief description of cause:
RICO, Breach of contract and related claims

## VII. REQUESTED IN   ☐ CHECK IF THIS IS A CLASS ACTION
COMPLAINT:               UNDER F.R.C.P. 23

DEMAND $                          CHECK YES only if demanded in complaint:
Excess of $75,000   JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY          (See instructions):

JUDGE                                    DOCKET NUMBER

DATE
9/14/2007

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**APPENDIX I**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Erik E. Kolar | : | CIVIL ACTION |
| v. | : | |
| Preferred Real Estate Investments, Inc. et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (X)

| | | |
|---|---|---|
| 9/14/2007 | David E. Braverman | Braverman Kaskey P.C. |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| (215) 575-3800 | (215) 575-3801 | dbraver@braverlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT

APPENDIX F

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: **1200 Liberty Ridge Drive, Suite 115, Wayne, PA 19087**

Address of Defendant: **1001 East Hector St., Suite 100, Conshohocken, PA 19428**

Place of Accident, Incident or Transaction: **Montgomery County (PA)**
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes☐ No☑

Does this case involve multidistrict litigation possibilities? Yes☐ No☑

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes☐ No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes☐ No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court? Yes☐ No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify) **RICO**

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, **David L. Braverman**, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: **9/14/2007**

Attorney-at-Law
David L. Braverman, Esquire

PA #35145
Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: **9/14/2007**

Attorney-at-Law
David L. Braverman, Esquire

PA #35145
Attorney I.D.#

CIV. 609 (4/03)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| ERIK E. KOLAR<br>c/o Patriot Equities L.P.<br>1200 Liberty Ridge Drive, Suite 115<br>Wayne, Pennsylvania 19087,<br>           Plaintiff, | CIVIL ACTION<br><br>No._____<br><br>JURY TRIAL DEMANDED |
| v. | |
| PREFERRED REAL ESTATE<br>INVESTMENTS, INC.<br>1001 East Hector Street, Suite 100<br>Conshohocken, Pennsylvania 19428. | |
| ISLAND VIEW CROSSING I, L.P.<br>1001 East Hector Street, Suite 100<br>Conshohocken, Pennsylvania 19428. | |
| PREFERRED REAL ESTATE<br>DEVELOPERS, L.P.<br>1001 East Hector Street, Suite 100<br>Conshohocken, Pennsylvania 19428, | |
| LEE PARK INVESTORS, L.P.<br>1001 East Hector Street, Suite 100<br>Conshohocken, Pennsylvania 19428, | |
| HAMILTON-NJ HOLDINGS, L.P.<br>134 Franklin Corner Road<br>Lawrenceville, New Jersey 08648, | |
| 240 PRINCETON AVENUE ASSOCIATES<br>830 Bear Tavern Road<br>West Trenton, New Jersey 08628, | |
| HUNTING FOX ASSOCIATES V, L.P.<br>1001 E. Hector Street, Suite 100<br>Conshohocken, Pennsylvania 19428, | |

RIVERTOWN HOLDINGS, L.P.                          :
1001 E. Hector St., Suite 100                     :
Conshohocken, Pennsylvania 19428, and             :
                                                  :
MICHAEL G. O'NEILL                                :
c/o PREFERRED REAL ESTATE                         :
INVESTMENTS, INC.                                 :
1001 East Hector Street, Suite 100                :
Conshohocken, Pennsylvania 19428,                 :
                                                  :
             Defendants.                          :
_____          :

## COMPLAINT

Plaintiff Erik E. Kolar ("Mr. Kolar"), by and through his undersigned counsel, brings this Complaint against defendants Preferred Real Estate Investments, Inc. ("PREI"), Island View Crossing I, L.P. ("Island View"), Lee Park Investors, L.P. ("LPI"), Preferred Real Estate Developers, L.P. ("PRED L.P."), Hamilton-NJ Holdings, L.P. ("Hamilton"),  240 Princeton Avenue Associates ("Princeton"), Hunting Fox Associates V, L.P. ("Hunting Fox"), Rivertown Holdings, L.P. ("Rivertown Holdings") and Michael G. O'Neill ("Mr. O'Neill"),  and avers in support thereof as follows:

## NATURE OF THE ACTION

1.      Mr. Kolar is engaged in the business of purchasing, developing, managing and selling real estate.

2.      In the early 1990s, Mr. O'Neill founded PREI, a corporation that was then and is now engaged in purchasing, developing, managing and selling real estate.  In 1998, Mr. Kolar joined PREI as a shareholder and as its president.  At all times material hereto, PREI and its affiliates purchased, developed, managed, sold, and provided real estate-related services in connection with various real estate projects.

2

3. In 2005, Mr. Kolar resigned from PREI as an employee, officer and director.

4. In connection with a series of real estate transactions in which Mr. Kolar is a partner and/or investor, defendants have engaged in a pattern of conduct designed to, and which did, deprive Mr. Kolar of the monies to which he was entitled pursuant to and as required under the parties' various written agreements. As more fully alleged below, monies otherwise payable to Mr. Kolar were wrongfully diverted or misappropriated by the defendants. In this action, Mr. Kolar seeks to recover money damages and other relief from the defendants.

## THE PARTIES

5. Mr. Kolar is an adult individual and a citizen of the Commonwealth of Pennsylvania. He maintains a business address at 1200 Liberty Ridge Drive, Suite 115, Wayne, Pennsylvania 19087.

6. PREI is a corporation, organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1001 East Hector Street, Suite 100, Conshohocken, Pennsylvania 19428.

7. Island View is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1001 East Hector Street, Suite 100, Conshohocken, Pennsylvania 19428.

8. PRED L.P. is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1001 East Hector Street, Suite 100, Conshohocken, Pennsylvania 19428.

3

9.      LPI is a limited partnership organized and existing, upon information and belief, under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1001 East Hector Street, Suite 100, Conshohocken, Pennsylvania 19428.

10.     Hamilton is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 134 Franklin Corner Road, Lawrenceville, New Jersey 08648.

11.     Princeton is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 830 Bear Tavern Road, West Trenton, New Jersey 08628.

12.     Hunting Fox is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1001 East Hector Street, Suite 100, Conshohocken, Pennsylvania 19428.

13.     Rivertown Holdings is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1001 East Hector Street, Suite 100, Conshohocken, Pennsylvania 19428.

14.     Mr. O'Neill is an adult individual and a citizen of the Commonwealth of Pennsylvania.  He maintains a business address at 1001 East Hector Street, Suite 100, Conshohocken, Pennsylvania 19428

## JURISDICTION AND VENUE

15.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1367 and 18 U.S.C. § 1961, *et. seq.*

4

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District, and under 18 U.S.C. § 1965(a), because defendants reside, are found, have an agent and/or transact their business affairs in this District.

## FACTUAL BACKGROUND

17.     PREI's business generally involves the acquisition of real property by single-purpose limited partnerships which, in turn, are owned by the principals of PREI. At all times material hereto, PREI's revenues were derived from the development of said real estate, together with construction, management and related services rendered to and in connection with such projects (such single-purpose limited partnerships hereinafter referred to as the "Affiliates").

18.     PRED L.P. is a limited partner of each of the Affiliates.

19.     Each of the Affiliates is governed by a separate written partnership and operating agreement. The form of these agreements is substantially the same for each Affiliate. All of the initial capital required for each Affiliate generally is funded *pro rata*, directly or indirectly, by PREI's principals, in accordance with their respective ownership interests in that Affiliate and/or in accordance with their respective ownership interests in PRED L.P.

20.     Upon information and belief, Mr. Kolar owns the following respective interests in the six (6) defendant Affiliates at issue in the instant case, either directly or indirectly through his interest in PRED L.P.:

> 30% in Island View
> 27% in LPI
> 28% in Hamilton
> 28% in Princeton
> 27% in Hunting Fox
> 28% in Rivertown Holdings

5

21.     Upon information and belief, with respect to PRED L.P., Mr. Kolar owns a 34.65% limited partnership interest, and also owns a 35% interest as a shareholder of PRED L.P.'s general partner, Preferred Real Estate Developers, Inc., a corporation organized and existing under the laws of the Commonwealth of Pennsylvania ("PRED, Inc."). Upon information and belief, PRED, Inc. owns a 1% general partnership interest in PRED L.P. (Precise data regarding Mr. Kolar's and others' ownership interests in the foregoing entities is in the exclusive control of defendants.) Mr. Kolar also owns minority interests as a shareholder of the respective general partners of each defendant Affiliate (in addition to his interests set forth in the foregoing paragraph).

22.     In 2005, Mr. Kolar resigned from PREI and entered into a Separation and Stock Repurchase Agreement and Mutual General Release with PREI (the "Separation Agreement"). A true and correct copy of the Separation Agreement is attached hereto and marked as Exhibit A.

23.     At the time of execution of the Separation Agreement, Mr. O'Neill was the Chairman of PREI; he executed the Separation Agreement on PREI's behalf.

24.     At all times material hereto, Mr. O'Neill also served as the senior executive officer of PRED, Inc.

25.     Subsequent to the execution of the Separation Agreement, Mr. O'Neill has controlled the business affairs of each and every defendant herein.

26.     The Separation Agreement sets forth Mr. Kolar's entitlement to, *inter alia*, various components of financial consideration to be paid to and/or to be retained by him. For example, the Separation Agreement provides, at Paragraph 5(a)(i), that Mr. Kolar retains all of his equity interests in all existing partnerships and that he continues "to be entitled to all rights

6

and benefits provided thereunder, including, without limitation, all rights to distributions and return of capital contributions" (the "Existing Equity Interests"). The Affiliates are included within the Separation Agreement's definition of "existing partnerships."  Separation Agreement, ¶ 5(a)(i) and Schedule 5(a)(i) thereto.  Therefore, at the time of his resignation, Mr. Kolar retained Existing Equity Interests in defendant Affiliates Island View, LPI, Hamilton, Princeton, and Rivertown, among other Affiliates.

27.     In addition to the retention of all of his Existing Equity Interests in the Affiliates, Mr. Kolar is entitled under the Separation Agreement to certain future equity interests concerning real properties that were subject to certain agreements (or in the process of being made subject to such agreements) at the time the Separation Agreement was executed (the "Future Equity Interests").  (Separation Agreement, ¶¶ 5(a)(ii) and 5(a)(iii)).

28.     Upon information and belief, subsequent to the execution of the Separation Agreement, defendants undertook certain capital transactions involving Mr. Kolar's Existing Equity Interests in the Affiliates, entitling Mr. Kolar to distributions in connection therewith. Upon information and belief, however, defendants, under the control and express direction of Mr. O'Neill, diverted and/or misappropriated monies thereby due and payable to Mr. Kolar.

29.     Defendants have asserted a variety of pretextual reasons for the failure to pay such monies to Mr. Kolar.  For example, defendants have asserted that defendants may use Mr. Kolar's monies on account of "capital calls" that they claim he is obligated to satisfy in connection with his Existing Equity Interests in other Affiliates.  Defendants are aware, however, that Mr. Kolar has no such obligation to satisfy capital calls, as is plainly set forth in the Separation Agreement and in the applicable partnership agreements for each such Affiliate.  The

7

assertion by Mr. O'Neill and the other defendants that Mr. Kolar is required to fund such capital

calls is without merit, unsupported by any of the relevant agreements (including the Affiliates'

respective limited partnership agreements and the Separation Agreement), and wholly pretextual.

Defendants' misrepresentations in this regard are part of their concerted efforts to divert Mr.

Kolar's monies and property to their own purposes, causing continuing harm and detriment to

Mr. Kolar.

## COUNT I
### Mr. Kolar v. PREI and Island View
### (Breach of Contract)

30.     Mr. Kolar repeats and realleges each and every allegation contained in paragraphs

1 through 29 of this Complaint as if set forth at length herein.

31.     Mr. Kolar owns an approximate thirty per cent (30%) interest in Island View.  As

set forth in the Island View Agreement of Limited Partnership ("the IV Agreement"), Mr.

Kolar's ownership interest in Island View results from his 35% partnership interest in PRED

L.P., which in turn owns an 86% interest in Island View.

32.     In or about 2006, Island View, as lessor, entered into a lease agreement with the

Lenox Corporation ("Lenox"), as lessee, for space in an existing office building located on real

property owned by Island View (the "Lenox Lease").

33.     Contemporaneous with the execution of the Lenox Lease, PREI and Mr. O'Neill,

acting through another entity created by PREI and Mr. O'Neill for the purpose of acquiring the

Wheeler Way Property (as hereinafter defined) and in which Mr. Kolar was not provided any

ownership interest, agreed to purchase a property owned by Lenox located at 900 Wheeler Way,

Langhorne, Pennsylvania (the "Wheeler Way Property"). Upon information and belief, the

8

asking price for the Wheeler Way Property was, at all times prior to the purchase and sale transaction described herein, approximately $10 million dollars.

34.     PREI and Mr. O'Neill, acting through another related entity, the identity of which is not known to Mr. Kolar, eventually purchased the Wheeler Way Property from Lenox for the dramatically discounted price of approximately $5.5 million and, in connection therewith, caused Island View to grant to Lenox an above-market allowance of approximately $4.5 million (over and above tenant improvement allowances) under the Lenox Lease.  In effect, the total consideration received by Lenox on account of the sale of the Wheeler Way Property was approximately $10 million dollars.  However, the transaction was structured by defendants in the manner hereinabove alleged to deprive Mr. Kolar of the monies to which he is otherwise entitled.

35.     Subsequent to the aforesaid purchase of the Wheeler Way Property, PREI quickly sold that property to a third party for approximately $8 million dollars (i.e., an approximately $2.5 million profit for PREI) providing no reimbursement whatsoever to Island View, the entity that previously granted the $4.5 million allowance to Lenox under the Lenox Lease.

36.     After learning of the aforesaid transactions, Mr. Kolar demanded that PREI and Mr. O'Neill account for said transactions, which demand has been denied.  Upon information and belief, Island View was entitled to have profited on the transaction by an additional $4,500,000, and Mr. Kolar is therefore entitled to a distribution of at least $1,350,000 (i.e., his 30% share of such $4.5 million) with respect to the Wheeler Way Property purchase and sale (over and above any amounts received by or promised to Mr. Kolar to date).

37.     As of this date, no reimbursement has been made by PREI to Island View thereby depriving Mr. Kolar of his financial interest therein.

9

38.     The aforesaid transactions concerning Island View and the failure by PREI to reimburse monies due to Island View and to thereafter distribute monies to Mr. Kolar on account of his interest constitute breaches of the Separation Agreement and of the IV Agreement.

39.     As a direct and proximate result of the aforesaid breaches of such agreements, PREI and Island View have caused and continue to cause Mr. Kolar substantial damages in excess of $75,000, exclusive of interest and costs.

**COUNT II**
**Mr. Kolar v. PREI and LPI**
**(Breach of Contract)**

40.     Mr. Kolar repeats and realleges each and every allegation contained in paragraphs 1 through 39 of this Complaint as if set forth at length herein.

41.     Mr. Kolar directly and/or indirectly owns an interest in LPI of approximately 27% of its equity.

42.     LPI was the owner of certain real property located in Conshohocken, Pennsylvania and commonly known as Lee Park.

43.     In or prior to 2006, PRED L.P. loaned LPI approximately $695,000.

44.     In or about 2006, Lee Park was sold to a third party. The sale generated proceeds in excess of the debt against the property and other obligations properly payable at closing (the "Lee Park Net Proceeds"), but less than the amount of all capital contributions made by LPI's partners, including Mr. Kolar's capital contributions totaling more than $4 million dollars.

45.     Prior to the aforesaid sale, PREI, under the direction and control of Mr. O'Neill, forwarded to Mr. Kolar by internet electronic mail a spreadsheet showing that Mr. Kolar would

receive distributions at closing totaling approximately $1.6 million on account of his interest in LPI.

46.     At the closing on the Lee Park sale, without any notice to or approval by Mr. Kolar, Mr. O'Neill caused PREI and LPI to withhold approximately $2 million of the Lee Park Net Proceeds and to subsequently loan said monies to other partnerships in which Mr. Kolar had smaller ownership interests (on a percentage basis), including 1400 Taylor Ave., LLC (of which Mr. Kolar owns approximately 25.1%). In so doing, PREI and LPI, under the direction and control of defendant Mr. O'Neill, used monies which Mr. Kolar was entitled to receive at closing to satisfy and/or subsidize Mr. O'Neill's capital contributions to other entities controlled by Mr. O'Neill.

47.     Moreover, at closing and without any notice to or approval by Mr. Kolar, Mr. O'Neill caused PREI and LPI to withhold $147,420 of the Lee Park Net Proceeds from Mr. Kolar's distribution, purportedly to satisfy Mr. Kolar's "unpaid" capital call "obligation" from November 2006. As hereinabove alleged, Mr. Kolar was not obligated to fund any such capital calls.

48.     Furthermore, at closing and without any notice to or approval by Mr. Kolar, Mr. O'Neill caused LPI to repay PRED L.P. only $200,000 of the $695,000 loan made by PRED L.P. to LPI, in breach of the agreement(s) governing such loan.

49.     As a result, and contrary to the aforesaid spreadsheet sent by defendants to Mr. Kolar by means of internet electronic mail:

> (a)     only $528,000 of the Lee Park Net Proceeds were distributed to Mr. Kolar, rather than the $1.6 million he was entitled to receive;

11

      (b)    $495,000 of the PRED L.P. loan to LPI remains outstanding and unsatisfied; and

      (c)    PRED L.P. has failed to distribute and/or account to Mr. Kolar for the repayment of $200,000 of the LPI loan (or to account for its failure to collect the balance of said loan).

50.    The failure by PREI and LPI, at the direction and under the control of Mr. O'Neill, to distribute monies due and owing to Mr. Kolar on account of his interests in LPI, constitutes a breach of the Separation Agreement and of the partnership agreements governing LPI and PRED L.P.

51.    As a direct and proximate result of the aforesaid breaches of LPI's governing agreements and of the Separation Agreement, PREI and LPI have caused and continue to cause Mr. Kolar substantial damages in excess of $75,000, exclusive of interest and costs.

### COUNT III
### Mr. Kolar v. PREI and PRED L.P.
### (Breach of Contract)

52.    Mr. Kolar repeats and realleges each and every allegation contained in paragraphs 1 through 51 of this Complaint as if set forth at length herein.

53.    Mr. Kolar directly owns a 34.65% equity interest in PRED L.P. Mr. Kolar also owns a 35% shareholder interest in PRED, Inc., which in turn owns a 1% interest in PRED, L.P. A true and correct copy of the partnership agreement governing PRED L.P. is attached hereto and marked as Exhibit B. Through Rivertown Holdings, PRED L.P. is the owner of more than 80% of the limited partnership interests in each of Rivertown Developers II, L.P., Rivertown Developers III, L.P., Rivertown Developers IV, L.P., Rivertown Developers V, L.P., Rivertown

12

Developers VI, L.P., and Rivertown Developers VII, L.P. (collectively, the "Rivertown Partnerships").

54.     The Rivertown Partnerships were the owners of various parcels of real property located in Chester County, Pennsylvania, which were sold for amounts substantially in excess of the debt on these properties and other obligations properly paid at closing (the "Rivertown Net Proceeds").

55.     Upon information and belief, PRED L.P., at the direction and under the control of Mr. O'Neill, failed and refused to pay over to Mr. Kolar his share of the Rivertown Net Proceeds, and instead diverted such proceeds to other entities under the control of Mr. O'Neill, thereby depriving Mr. Kolar of his interest in said Rivertown Net Proceeds.

56.     The failure by PRED L.P. and PREI to distribute monies due and owing to Mr. Kolar constitutes a breach of the Separation Agreement and of the partnership agreements governing each of the Rivertown Partnerships and PRED L.P.

57.     As a direct and proximate result of the aforesaid breach of agreements, defendants have caused and continue to cause Mr. Kolar substantial damages in excess of $75,000, exclusive of interest and costs.

### COUNT IV
### Mr. Kolar v. PREI, PRED L.P. and RIVERTOWN HOLDINGS
### (Breach of Contract)

58.     Mr. Kolar repeats and realleges each and every allegation contained in paragraphs 1 through 57 of this Complaint as if set forth at length herein.

59.     Upon information and belief, PRED L.P., PREI and Rivertown Holdings, at the direction and under the control of Mr. O'Neill, failed and refused to pay over to Mr. Kolar his

13

share of the Rivertown Net Proceeds, and instead diverted such proceeds to other entities under the control of Mr. O'Neill, thereby depriving Mr. Kolar of his interest in said Rivertown Net Proceeds.

60.     The failure by PRED L.P., PREI and Rivertown Holdings to distribute monies due and owing to Mr. Kolar constitutes a breach of the Partnership Agreement governing PRED, L.P.  (Exhibit B) and the partnership agreements relating to Rivertown Holdings.

61.     As a direct and proximate result of the aforesaid breaches of such agreements, defendants have caused and continue to cause Mr. Kolar substantial damages in excess of $75,000, exclusive of interest and costs.

**COUNT V**
**Mr. Kolar v. PREI, Hamilton, and Princeton**
**(Breach of Contract)**

62.     Mr. Kolar repeats and realleges each and every allegation contained in paragraphs 1 through 61 of this Complaint as if set forth at length herein.

63.     Mr. Kolar owns a 28% interest in Hamilton, and through Hamilton, a 28% interest in Princeton. These entities are the owners of the project known as the American Standard Project ("American Standard").

64.     In or about early 2006, PREI, Hamilton and Princeton, at the direction and under the control of Mr. O'Neill, informed Mr. Kolar by internet electronic mail transmission that American Standard had been placed under an agreement of sale, for a sale price of approximately $15 million dollars in excess of the debt against the property and other obligations properly payable at closing (the "American Standard Net Proceeds").

14

65.     A few months later, upon information and belief, Mr. O'Neill and PREI caused Hamilton and Princeton to sell American Standard for an amount well in excess of the debt against the property.

66.     Upon information and belief, Mr. O'Neill and PREI misappropriated certain American Standard Net Proceeds otherwise due and payable to Mr. Kolar and, further, diverted certain monies in violation of the Hamilton and Princeton limited partnership agreements and the Separation Agreement.  By way of example, upon information and belief, PREI, under the direction and control of Mr. O'Neill, charged Hamilton and/or Princeton a construction management fee of 10%, in violation of paragraph 5(c) of the Separation Agreement.

67.     The aforesaid transactions concerning PREI and the failure by PREI, Hamilton and Princeton to distribute monies due and owing to Mr. Kolar on account of his interest in PREI constitute a breach of the Separation Agreement and of the partnership agreements governing Hamilton and Princeton.

68.     As a direct and proximate result of the aforesaid breaches of such agreements, defendants have caused and continue to cause Mr. Kolar substantial damages in excess of $75,000, exclusive of interest and costs.

**COUNT VI**
**Mr. Kolar v. PREI and Hunting Fox**
**(Breach of Contract)**

69.     Mr. Kolar repeats and realleges each and every allegation contained in paragraphs 1 through 67 of this Complaint as if set forth at length herein.

70.     In 2007, PREI and Hunting Fox, at the direction and under the control of Mr. O'Neill, informed Mr. Kolar by internet electronic mail transmission that the partnership

15

interests in Hunting Fox had been placed under an agreement of sale, for a sale price of approximately $4.16 million dollars.

71.     Prior to the sale of the Hunting Fox partnership interests, Mr. Kolar had made various loans to Hunting Fox.

72.     Prior to the aforesaid sale of Hunting Fox, PREI, at the direction and under the control of Mr. O'Neill, provided Mr. Kolar with a spreadsheet by internet electronic mail transmission showing that: (a) Mr. Kolar would be entitled to receive loan repayments from the Hunting Fox partnership interest sale totaling approximately $142,132.46; and (b) that PREI would be paid a 10% construction management fee. Mr. Kolar objected to the payment of such construction management fee as violative of the Separation Agreement.

73.     On or about June 22, 2007, Mr. Kolar delivered to PREI his signature pages for the Hunting Fox partnership interest sale, to be held in escrow. Mr. Kolar's escrow instructions to PREI specifically stated that his signature pages could only be released upon the simultaneous wiring to Mr. Kolar of the $142,132.46 loan repayment and $41,266,00 which represented his 27.25% interest in the excess construction management fee being charged by PREI in violation of the Separation Agreement.

74.     Notwithstanding Mr. Kolar's express escrow instructions to the contrary, PREI released Mr. Kolar's signature pages to the purchaser of the Hunting Fox partnership interests without making full payment to Mr. Kolar.

75.     Upon information and belief, Mr. O'Neill and PREI misappropriated certain proceeds from the Hunting Fox sale otherwise due and payable to Mr. Kolar and, further, diverted certain monies in violation of the Separation Agreement.

16

76.     The aforesaid transactions concerning PREI and the failure by PREI and Hunting

Fox to distribute monies due and owing to Mr. Kolar on account of his interest in PREI and

Hunting Fox constitute a breach of the Separation Agreement and of the partnership agreement

governing Hunting Fox.

77.     As a direct and proximate result of the aforesaid breaches of such agreements,

defendants have caused and continue to cause Mr. Kolar substantial damages in excess of

$75,000, exclusive of interest and costs.

**COUNT VII**
**Mr. Kolar v. All Defendants**
**(Declaratory Judgment That Mr. Kolar is Not Obligated to Fund Capital Calls)**

78.     Mr. Kolar repeats and realleges each and every allegation contained in paragraphs

1 through 77 of this Complaint as if set forth at length herein.

79.     Ever since the execution of the Separation Agreement, PREI has continued to

make demands upon Mr. Kolar to fund capital calls with respect to the Affiliates.  PREI claims

that Mr. Kolar is a general partner of these Affiliates and that he therefore has an obligation to

fund such capital calls.

80.     Contrary to PREI's assertion, the Separation Agreement and the relevant

partnership agreements make plain that Mr. Kolar is not a general partner of any of the Affiliates

and that he bears no capital funding obligations with respect to such Affiliates whatsoever. *See,*

*e.g.,* Exhibit B at Paragraph 5.7.  Rather, Mr. Kolar is a shareholder of each Affiliate's respective

corporate general partner.  Moreover, although Mr. Kolar has on occasion made capital

investments in various Affiliates on a voluntary basis, there is no "course of conduct" or

17

"business practice" which obligates him to do so in the future (particularly as he is no longer employed by PREI).

81.     An actual and justiciable controversy has arisen and presently exists as to whether Mr. Kolar is obligated to fund such capital contributions with respect to the Affiliates. Mr. Kolar properly claims, on the basis of the relevant governing partnership agreements and the Separation Agreement, that he is not obligated to fund such capital contributions. Defendants, under the control of Mr. O'Neill, assert the contrary, and continue to divert monies owed to Mr. Kolar to fund such illusory capital call "obligations."

82.     Mr. Kolar is entitled to a judicial declaration that he is not obligated to fund such capital contributions.

83.     A declaratory judgment is necessary and proper to set forth the rights and obligations that exist among the parties with respect to the funding of capital contributions. In the absence of such a declaration, Mr. Kolar has been and will continue to be harmed and damaged in an amount exceeding $75,000, exclusive of interest and costs.

## COUNT VIII
### Mr. Kolar v. Mr. O'Neill
### (Breach of Fiduciary Duty)

84.     Mr. Kolar repeats and realleges each and every allegation contained in paragraphs 1 through 83 of this Complaint as if set forth at length herein.

85.     At all times relevant hereto, Mr. O'Neill was responsible to Mr. Kolar as the president of PREI, as the president of PRED L.P.'s corporate general partner, and as a principal of the Affiliates who controlled the business affairs of each such entity.

86.     Mr. Kolar justifiably reposed trust and confidence in Mr. O'Neill and Mr. O'Neill led Mr. Kolar to reasonably expect that he (Mr. O'Neill) would take all steps necessary to ensure compliance by all appropriate entities with all obligations of performance owed or to be owed to Mr. Kolar.

87.     In particular, Mr. O'Neill served as a fiduciary for Mr. Kolar with respect to the aforesaid obligations under the Separation Agreement, the IV Agreement, the PRED L.P. Agreement, and all other applicable partnership agreements relating to the Affiliates.

88.     Pursuant to applicable law (including, but not limited to, 15 Pa.C.S.A. Chap. 85) and in connection with his role as a fiduciary and as Mr. Kolar's partner, Mr. O'Neill had a duty to act in a manner which ensured that all of the defendants complied with their respective obligations to Mr. Kolar as set forth above.

89.     As a fiduciary, Mr. O'Neill owed and owes Mr. Kolar the duties of (*inter alia*) due care, unvarnished loyalty, utmost candor, good faith, and fair dealing.

90.     Mr. O'Neill's conduct as set forth above constitutes gross and willful breaches of his fiduciary duties which directly and proximately caused and continue to cause harm and damage to Mr. Kolar in an amount in excess of $75,000, exclusive of interest and costs.

### COUNT IX
### Mr. Kolar v. Mr. O'Neill
### (Intentional Interference with Contractual Relationships)

91.     Mr. Kolar repeats and realleges each and every allegation contained in paragraphs 1 through 90 of this Complaint as if set forth at length herein.

19

92.     At all times relevant hereto, Mr. O'Neill had actual knowledge of the contractual relationships between Mr. Kolar, on one hand, and each of PREI, Island View, LPI, PRED L.P., Hamilton, Princeton, Hunting Fox and Rivertown Holdings, on the other.

93.     By reason of his wrongful conduct as set forth herein, Mr. O'Neill intentionally, willfully, and maliciously interfered with the aforesaid contractual relationships of Mr. Kolar.

94.     Mr. O'Neill's aforesaid interference with the known contractual relationships of Mr. Kolar was the proximate cause of the breaches thereof by each of PREI, Island View, LPI, PRED L.P., Hamilton, Princeton, Hunting Fox and Rivertown Holdings.

95.     Mr. O'Neill's aforesaid interference with the known contractual relationships of Mr. Kolar was neither privileged nor justified and was committed with the express and specific intent and purpose that the subject relationships be so interfered with and breached.

96.     As a direct and foreseeable result, the aforesaid acts and conduct of Mr. O'Neill did in fact interfere with said contractual relationships of Mr. Kolar and have caused and continue to cause Mr. Kolar substantial detriment and damages in an amount in excess of $75,000, exclusive of interest and costs.

97.     Mr. O'Neill's aforesaid tortious conduct was, and is, sufficiently wanton, willful and reckless so as to justify the imposition of an award of punitive damages to punish such conduct.

### COUNT X
### Mr. Kolar v. All Defendants
### (Conversion)

98.     Mr. Kolar repeats and realleges each and every allegation contained in paragraphs 1 through 97 of this Complaint as if set forth at length herein.

20

99.    Defendants, by and through their own acts and the acts of Mr. O'Neill, received and knowingly diverted distributions from the sale of real properties in which Mr. Kolar owned interests, thereby depriving Mr. Kolar of such interests or of the proceeds therefrom to which he was entitled under the terms of the Separation Agreement and the operative partnership agreements.

100.   By failing and refusing to distribute the aforesaid monies to Mr. Kolar, defendants deprived Mr. Kolar of such interests and/or proceeds therefrom without his consent and without legal justification.

101.   Defendants engaged in the aforesaid conduct for the purpose of exercising dominion and control over the property interests and/or proceeds therefrom which are rightfully the property of Mr. Kolar.

102.   As a direct and foreseeable result, the aforesaid acts and conduct of defendants (including Mr. O'Neill) have caused and continue to cause Mr. Kolar substantial detriment and damages in an amount in excess of $75,000, exclusive of interest and costs.

103.   Defendants' conduct was sufficiently egregious, outrageous, malicious, wanton, willful and reckless as to justify the imposition of an award of punitive damages to punish such conduct.

### COUNT XI
**Mr. Kolar v. All Defendants**
**(RICO Claim under 18 U.S.C. § 1962(a))**

104.   Mr. Kolar repeats and realleges each and every allegation contained in paragraphs 1 through 103 of this Complaint as if set forth at length herein.

105.    The full scope of defendants' wrongdoing and illegal activity is unknown, and Mr. Kolar's investigation of same is ongoing. As the nature of defendants' conduct and the information concerning same is uniquely in the possession of defendants and/or their accomplices, known and unknown, the full extent of their fraudulent and corrupt enterprise, and the participants therein, will not be known until full and complete discovery is conducted in accordance with the Federal Rules of Civil Procedure.

106.    Mr. O'Neill is a person within the meaning of 18 U.S.C. § 1961(3) because he is an individual capable of holding a legal or beneficial interest in property. Defendants PREI, Island View, LPI, PRED L.P., Hamilton, Princeton, Hunting Fox and Rivertown Holdings are each persons within the meaning of 18 U.S.C. § 1961(3) in that each such defendant is an entity capable of holding a legal or beneficial interest in property. Defendants Mr. O'Neill, PREI, Island View, LPI, PRED L.P., Hamilton, Princeton, Hunting Fox and Rivertown Holdings are real estate acquisition and management entities which constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4) in that they comprise a group of entities which together are associated in fact for the purpose of engaging in a course of conduct, *viz.*, the acquisition, management and sale of parcels of real property which affect interstate commerce (the "Property Enterprise").

107.    At all times relevant hereto, the Property Enterprise has been, and continues to be, engaged in by defendants, and its activities have affected and continue to affect interstate commerce through, *inter alia*, leasing real property in New Jersey and Pennsylvania to corporations and other entities that transact business in interstate commerce, and through interstate borrowing, lending, and distribution of profits and other revenues.

22

108.    The Property Enterprise is separate and distinct from each of its members, yet the enterprise exists to advance the interests of each of its members.  Its activities include acquiring and managing properties, disposing of such properties (usually at a profit), and diverting proceeds resulting from such dispositions otherwise distributable to Mr. Kolar (and possibly to other equity holders) to his detriment and to the benefit of the Property Enterprise's members.

109.    Defendants, as the principal architects of the unlawful and fraudulent conduct set forth herein, conducted the Property Enterprise's affairs through the pattern of racketeering activity set forth herein.

110.    Defendants' actions alleged herein occurred on numerous occasions from and after at least the date of the Separation Agreement, and were performed on a continuous and consistent basis.

111.    Defendants' actions as alleged herein all have the same design and purpose: to generate proceeds from the management and sales of properties and to fraudulently divert Mr. Kolar's (and possibly other equity holders') share of such proceeds to other projects, and/or to demand, without any legal basis, that Mr. Kolar (and possibly other equity holders) satisfy capital calls, all to the benefit of the Property Enterprise's members.

112.    Defendants have conducted the affairs of the Property Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), as is set forth below.

113.    Defendants have conducted the affairs of the Property Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) in that defendants

conducted the affairs of the Property Enterprise through a pattern of mail fraud and wire fraud, indictable under 18 U.S.C. §§ 1341 and 1343, respectively, as is set forth below.

114.     Defendants have conducted the affairs of the Property Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) in that defendants conducted the affairs of the Property Enterprise through multiple acts of mail fraud and/or wire fraud, each of which occurred after the effective date of 18 U.S.C. Chap. 96, as amended, and each of which (including the last of which) occurred within ten years of one another, as is set forth below.

115.     Such multiple acts of mail fraud and/or wire fraud, as are set forth below, constitute a continuous and related pattern of activity within the meaning of 18 U.S.C. § 1961(5) in that each of them are related to defendants' common goal of diverting monies from Mr. Kolar that are lawfully owed to him.

116.     Such multiple acts of mail fraud and/or wire fraud, as are set forth below, constitute defendants' normal and usual way of conducting their business.

117.     Mr. O'Neill had the authority to and did direct and control the operations and management of the affairs of the Property Enterprise with respect to all of its activities, including by personally receiving, using and/or investing, directly or indirectly, all or part of the income (and/or the proceeds thereof) derived therefrom in connection with maintaining the Property Enterprise and in connection with the diversion of monies otherwise distributable to Mr. Kolar.

118.     By so conducting the affairs of the Property Enterprise, Mr. O'Neill has violated 18 U.S.C. § 1962(a), and is liable along with the other defendants under 18 U.S.C. § 1964 for treble damages.

24

119.    The length and extent of defendants' scheme to manipulate the Property Enterprise as aforesaid demonstrate a manner of conducting business which is unlawful. Accordingly, there is no way to insure that, in the future, defendants will not continue to use the Property Enterprise for further improper and unlawful transactions.

120.    From in or about as early as the beginning of 2005 through the current time, defendants executed their unlawful scheme, as set forth herein, by the use of interstate mail, by way of repeated indictable violations of the mail fraud statute, 18 U.S.C. § 1341, and/or by the use of interstate wires, including, but not limited to, transmissions by telephone, facsimile, and electronic mail, in repeated indictable violations of the wire fraud statute, 18 U.S.C. § 1343. These racketeering acts are related in that they had a common goal, used similar means, and had a common victim, namely, Mr. Kolar (and possibly other equity holders).

121.    The subject racketeering activity poses a threat of continuing in that (a) it is part of the regular way in which the business of the Property Enterprise is conducted; (b) the activity has extended over a period in excess of two (2) years; and  (c) it continues to injure Mr. Kolar and possibly other who hold equity interests the members of the Property Enterprise (including the Affiliates).

122.    As part of the defendants' racketeering activity, they have directly and indirectly, by use of the means and instrumentalities of interstate commerce, including the mails and wires, employed manipulative and deceptive devices and contrivances, among other things, to induce Mr. Kolar to fund capital calls against his will and not in fulfillment of any existing obligation, to surreptitiously divert to other business entities monies otherwise distributable to Mr. Kolar, to allow the Affiliates, PREI, and PRED L.P. to be unlawfully managed and operated in violation

25

of, *inter alia*, their respective governing documents and relevant fiduciary duties, and to permit Mr. O'Neill to have free rein to use funds and property of Mr. Kolar for his own personal benefit, all to the detriment and harm of Mr. Kolar and possibly other investors in the Affiliates. Defendants accomplished this result by employing artifices and schemes to defraud, making false and misleading statements, and engaging in acts, practices and courses of business conduct (as alleged herein) that would and did operate as a fraud and deceit on Mr. Kolar, all in violation of 18 U.S.C. §§ 1341 and 1343. The pattern of racketeering activity included, but is not limited to:

    (a) sending to Mr. Kolar, and possibly to other investors, through the use of the mails and/or wires, false and misleading information about the Property Enterprise including information calculated to induce Mr. Kolar to either satisfy capital calls for which he was not obligated or to refrain from challenging property transactions where he was falsely led to believe he would receive significant distributions on account of his interests therein; and

    (b) sending to Mr. Kolar, and possibly to other investors, through the use of the mails and/or wires, false, deceptive and misleading projections, financial and tax related information, accountings, and other material information related to the various real property transactions engaged in, and to be engaged in, by the Affiliates including, without limitation:

        i.  an internet electronic mail message dated December 5, 2006, from Nimish Sanghrajka to Mr. Kolar, with a copy to Mr. O'Neill (the "December 5 E-Mail");

26

    ii.   an internet electronic mail message dated December 18, 2006, from Nimish Sanghrajka to Denise Gorni (the "December 18 E-Mail");

    iii.   an internet electronic mail message dated December 19, 2006, from Denise Gorni to Tim McKenna (the "December 19 E-Mail");

    iv.   an internet electronic mail message dated January 9, 2007, from Denise Gorni to Tim McKenna, with a copy to Mr. O'Neill (the "January 9 E-Mail");

    v.   an internet electronic mail message dated February 7, 2007, from Peter Armstrong to Eric Kolar (the "February 7 E-Mail"); and

    vi.   various letters, presentations, spreadsheets, and other documents that were sent by or on behalf of defendants to Mr. Kolar by means of the U.S. Mail and/or private or commercial interstate carriers (including Federal Express and United Parcel Service) and that contained the same or similar false, deceptive, and misleading assertions as are contained in wire communications referenced in the foregoing subparagraphs.

(Such false, deceptive, and misleading communications through the mail and/or wires listed in the foregoing subparagraphs are hereinafter collectively referred to as the "Predicate Acts.")

123.    The December 5 E-Mail constitutes an indictable instance of wire fraud in violation of 18 U.S.C. § 1343 (and therefore constitutes a Predicate Act for purposes of 18 U.S.C. § 1961(a)) in that, *inter alia*,

(a) it was sent by defendants or at their direction by means of wire in interstate commerce in furtherance of their scheme to defraud Mr. Kolar (as set forth herein);

(b) it falsely asserts that Mr. Kolar "[has] an obligation to fund [the Affiliates' capital] shortfalls in a timely fashion," (*i.e.*, that Mr. Kolar has an obligation to fund capital calls with respect to the Affiliates), notwithstanding defendants' knowledge that Mr. Kolar has no such obligation;

(c) to induce Mr. Kolar to fund such capital calls (notwithstanding his lack of obligation to do so), it threatens Mr. Kolar with the unlawful diversion of monies due and owing to him, telling him that "[i]n future [sic] if you so desire we can hold back monies from properties you will be receiving distributions [sic] to fund your share of these capital calls.  [¶.]  In order to continue for us [sic] to try to make the right decisions for the partnerships we need to fund the capital calls. Please let us know when you will be putting these monies up."; and

(d) it suggests to Mr. Kolar that defendants will continue to unlawfully divert monies due and owing to him unless and until he files litigation to stop such practice, telling him "we suggest that the best option for you is to go to court."

124.    The December 18 E-Mail (which was forwarded by Ms. Gorni to Mr. McKenna, and thereafter by Mr. McKenna to Mr. Kolar) constitutes an indictable instance of wire fraud in violation of 18 U.S.C. § 1343 (and therefore constitutes a Predicate Act for purposes of 18 U.S.C. § 1961(a)) in that, *inter alia*,

28

(a) it was sent by defendants or at their direction by means of wire in interstate commerce in furtherance of their scheme to defraud Mr. Kolar (as set forth herein);

(b) it falsely asserts PREI's and LPI's entitlement to withhold approximately $2 million of the Lee Park Net Proceeds and to subsequently loan said monies to a variety of partnerships in which Mr. Kolar has smaller interests than his interest in LPI, notwithstanding defendants' knowledge of the falsity of such assertions;

(c) it falsely asserts PREI's and LPI's entitlement to withhold approximately $147,420 of the Lee Park Net Proceeds from Mr. Kolar's distribution, purportedly to satisfy Mr. Kolar's "unpaid" capital call "obligation" from November 2006, notwithstanding defendants' knowledge that Mr. Kolar had no such obligation and that defendants were not entitled to such withholding;

(d) it falsely asserts PREI's and LPI's entitlement to withhold approximately $3 million of the Lee Park Net Proceeds for "expenses," notwithstanding defendants' knowledge that such expenses (and, in particular, the amount of such expenses) were unjustified and not permitted to be withheld at such level; and

(e) it falsely asserts that LPI would repay its $695,000 loan obligation to PRED L.P. in its entirety at the closing, notwithstanding defendants' knowledge that LPI would repay only $200,000 of such loan at the closing.

125.    The December 19 E-Mail constitutes an indictable instance of wire fraud in violation of 18 U.S.C. § 1343 (and therefore constitutes a Predicate Act for purposes of 18 U.S.C. § 1961(a)) in that, *inter alia*,

29

(a) it was sent by defendants or at their direction by means of wire in interstate commerce in furtherance of their scheme to defraud Mr. Kolar (as set forth herein); and

(b) it falsely asserts PREI's and LPI's entitlement to withhold approximately $712,000 of the Lee Park Net Proceeds for property management fees (payable to defendants) and salary reimbursements, notwithstanding defendants' knowledge that such expenses (and, in particular, the amount of such expenses) were unjustified and not permitted to be withheld at such level.

126.    The January 9 E-Mail constitutes an indictable instance of wire fraud in violation of 18 U.S.C. § 1343 (and therefore constitutes a Predicate Act for purposes of 18 U.S.C. § 1961(a)) in that, *inter alia,*

(a) it was sent by defendants or at their direction by means of wire in interstate commerce in furtherance of their scheme to defraud Mr. Kolar (as set forth herein);

(b) it falsely asserts PREI's and LPI's entitlement to withhold approximately $2 million of the Lee Park Net Proceeds and to subsequently loan said monies to a variety of partnerships in which Mr. Kolar has smaller interests than his interest in LPI, notwithstanding defendants' knowledge of the falsity of such assertions;

(c) it falsely asserts PREI's and LPI's entitlement to withhold approximately $147,420 of the Lee Park Net Proceeds from Mr. Kolar's distribution, purportedly to satisfy Mr. Kolar's "unpaid" capital call "obligation" from November 2006,

notwithstanding defendants' knowledge that Mr. Kolar had no such obligation and that defendants were not entitled to such withholding; and

(d) it falsely asserts PREI's and LPI's entitlement to withhold approximately $3 million of the Lee Park Net Proceeds for "expenses," notwithstanding defendants' knowledge that such expenses (and, in particular, the amount of such expenses) were unjustified and not permitted to be withheld at such level.

127.    The February 7 E-Mail constitutes an indictable instance of wire fraud in violation of 18 U.S.C. § 1343 (and therefore constitutes a Predicate Act for purposes of 18 U.S.C. § 1961(a)) in that, *inter alia,*

(a) it was sent by defendants or at their direction by means of wire in interstate commerce in furtherance of their scheme to defraud Mr. Kolar (as set forth herein); and

(b) it falsely asserts PREI's and LPI's entitlement to withhold approximately $1.22 million of the Lee Park Net Proceeds and to subsequently loan said monies to a variety of partnerships in which Mr. Kolar has smaller interests than his interest in LPI, notwithstanding defendants' knowledge of the falsity of such assertions.

128.    As set forth herein, defendants have received and diverted income derived from the pattern of racketeering activity undertaken by the Property Enterprise (including the Predicate Acts) and have used and invested such monies, directly or indirectly, to fund enterprises engaged in, or the activities of which affect, interstate commerce.  For example, and without limitation,

31

(a) as defendants admitted in the December 18 E-Mail, defendants diverted funds from the Lee Park Net Proceeds to fund the operations of the following enterprises, each of which is engaged in interstate commerce or undertakes activities that affect interstate commerce:

    (i)    Kooper Street: $12,000 diverted from Lee Park Net Proceeds;

    (ii)    Coroad Associates: $300,000 diverted from Lee Park Net Proceeds;

    (iii)    999 Grand Avenue: $215,000 diverted from Lee Park Net Proceeds;

    (iv)    PRED, L.P.: $695,000 diverted from Lee Park Net Proceeds;

    (v)    PREI: $4,533.23 diverted from Lee Park Net Proceeds; and

    (vi)    PREA: $4,594.93 diverted from Lee Park Net Proceeds.

(b) as defendants admitted in the February 7 E-Mail, defendants diverted funds from the Lee Park Net Proceeds to fund the operations of the following enterprises, each of which is engaged in interstate commerce or undertakes activities that affect interstate commerce:

    (i)    Phillipsburg Associates, LP: $157,000 diverted from Lee Park Net Proceeds;

    (ii)    1400 Taylor Associates, LP: $70,000 diverted from Lee Park Net Proceeds;

    (iii)    PREI Attleboro Associates, LP: $140,000 diverted from Lee Park Net Proceeds;

    (iv)    PREI Attleboro Associates II, LP: $17,000 diverted from Lee Park Net Proceeds;

(v)     PREI Attleboro Associates III, LP: $302,000 diverted from Lee Park Net Proceeds;

(vi)    Perryville Developers III, LP: $291,000 diverted from Lee Park Net Proceeds; and

(vii)   259 Prospect Plains Associates, LP: $247,000 diverted from Lee Park Net Proceeds.

129.    As a direct and proximate result of such unlawful Predicate Acts and such unlawful racketeering activity, Mr. Kolar has suffered substantial damages in excess of $75,000, exclusive of interest and costs, and is entitled to recover treble damages, costs of suit, and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

130.    Defendants' conduct in engaging in such racketeering activity was sufficiently wanton, willful and reckless as to justify the imposition of punitive damages against the defendants to punish such conduct.

### COUNT XII
**Mr. Kolar v. All Defendants**
**(Civil RICO Claim under 18 U.S.C. § 1962(c))**

131.    Mr. Kolar repeats and realleges each and every allegation contained in paragraphs 1 through 130 of this Complaint as if set forth at length herein.

132.    Defendants committed each and every one of the Predicate Acts as set forth herein.

133.    Each defendant is employed by and/or associated with the Property Enterprise as set forth herein.

33

134.    The Property Enterprise is engaged in interstate commerce, and its activities affect interstate commerce, as set forth herein.

135.    Each defendant directly or indirectly has conducted and participated, and continues to conduct and participate, in the conduct of the Property Enterprise's affairs through a pattern of racketeering activity, including but not limited to the Predicate Acts, as set forth herein.

136.    Such racketeering activity, including but not limited to the Predicate Acts, has caused direct financial harm to Mr. Kolar by, *inter alia*, depriving him of monies that are due and owing to him and that were wrongfully and fraudulently diverted rather than paid to him.

137.    By so conducting the affairs of the Property Enterprise, each defendant has violated 18 U.S.C. § 1962(c), and is liable under 18 U.S.C. § 1964 for treble damages, costs of suit, and attorneys' fees.

138.    As a direct and proximate result of such unlawful racketeering activity, Mr. Kolar has suffered substantial damages in excess of $75,000 and is entitled to recover treble damages, costs of suit, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

139.    Defendants' conduct in engaging in such racketeering activity was sufficiently wanton, willful and reckless as to justify the imposition of punitive damages against the defendants to punish such conduct.

**COUNT XIII**
**Mr. Kolar v. All Defendants**
**(Civil RICO Claim under 18 U.S.C. § 1962(d))**

140.    Mr. Kolar repeats and realleges each and every allegation contained in paragraphs 1 through 139 of this Complaint as if set forth at length herein.

34

141.    Defendants have knowingly and willfully conspired between and among themselves (and, upon information and belief, with third parties unknown to Mr. Kolar) to violate 18 U.S.C. §§ 1962(a) and/or 1962(c) by engaging in the pattern of racketeering activity set forth herein.

142.    Defendants' concerted acts constitute a wrongful combination or agreement to commit unlawful acts, as set forth herein.

143.     In the alternative, defendants' concerted acts constitute a wrongful combination or agreement to commit otherwise lawful acts by unlawful means, as set forth herein.

144.    Defendants' unlawful concerted acts were committed maliciously and without justification or excuse, as set forth herein.

145.    As a direct and proximate result of defendants' unlawful concerted acts as set forth herein, Mr. Kolar has suffered and continues to suffer substantial damages in an amount in excess of $75,000, exclusive of interest and costs.

146.    Defendants' conduct in engaging in the aforesaid conspiracy was sufficiently wanton, willful and reckless as to justify the imposition of punitive damages against the defendants to punish such conduct.

### COUNT XIV
### Mr. Kolar v. All Defendants
### (Claim for an Accounting)

147.    Mr. Kolar repeats and realleges each and every allegation contained in paragraphs 1 through 146 of this Complaint as if set forth at length herein.

148.    Defendants have a duty to account to Mr. Kolar for all business activities subsequent to the date of the Separation Agreement including, without limitation, a full and

detailed accounting for all Existing Equity Interests, the status of all Future Equity Interests, and a full and detailed accounting of any and all proceeds resulting from the Affiliates' real property sales and the distributions and/or loans and/or other transfers resulting therefrom and/or related thereto.

149.    Mr. Kolar respectfully requests that this Court issue an Order compelling and requiring defendants to provide such detailed accounting, in writing, and to provide regular updates of same on a timely basis.

### COUNT XV
### Mr. Kolar v. All Defendants
### (Unjust Enrichment)

150.    Mr. Kolar repeats and realleges each and every allegation contained in paragraphs 1 through 149 of this Complaint as if set forth at length herein.

151.    By engaging in the conduct complained of herein, defendants have been able to extract significant sums of money to which they were not entitled from transactions involving the Affiliates without the authorization or approval of Mr. Kolar, the sole individual entitled to such monies.

152.    Defendants were unjustly enriched by and benefited from such misconduct at the expense and to the detriment of Mr. Kolar.

153.    Under such circumstances, it would be  inequitable and unjust for defendants to retain the value and benefits of their unlawful conduct without properly compensating Mr. Kolar for the fair value thereof, which value is significant, is continuing, and is well in excess of $75,000, exclusive of interest and costs.

## DEMAND FOR TRIAL BY JURY

154.    Pursuant to Fed. R. Civ. P. 38(b), Mr. Kolar hereby demands a trial by jury of all issues so triable under the law.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff Erik E. Kolar respectfully requests that judgment be entered in his favor and against the defendants, individually and jointly, as follows:

(a)     For compensatory damages in an amount in excess of $75,000 (exclusive of interest and costs), together with interest and costs;

(b)     For treble damages, costs of suit, and reasonably attorneys' fees, pursuant to 18 U.S.C. § 1964(c);

(c)     For a declaratory judgment that Mr. Kolar is not obligated to fund capital calls;

(d)     For a detailed accounting of all transactions in which Mr. Kolar has any interest whatsoever;

(e)     For punitive damages for defendants' outrageous and malicious conduct;

(f)     For additional damages on account of pecuniary and consequential losses suffered by Mr. Kolar in an appropriate amount to be determined; and

(g)     For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

BRAVERMAN KASKEY P.C.

BY: _____

David L. Braverman
1650 Market Street – 21st Floor
Philadelphia, Pennsylvania 19103
(215) 575-3800

*Attorneys for Plaintiff Erik E. Kolar*

Dated: September 17, 2007